Guadalupe **FONSECA** et ux., Appellants,

v.

**COUNTY OF HIDALGO, Texas, Appellee.**

No. 954.

Court of Civil Appeals of Texas, Corpus Christi.

June 19, 1975.

Rehearing Denied Aug. 29, 1975.

Eduardo E. de Ases, Corpus Christi, for appellants.

Travis Hiester, Edinburg, for appellee.

## OPINION

NYE, Chief Justice.

The appellants seek to set aside an agreed judgment on the grounds of mistake. A final judgment in a condemnation case was signed and entered by the trial court on September 3, 1974, awarding to appellants $29,245.00 for a right of way easement on a tract of land owned by appellants and located in Hidalgo County, Texas. Three days later, the appellants filed a motion to set aside the final judgment entered on the ground of unilateral mistake. The trial court denied appellants' motion. It is from that ruling that the appellants have duly perfected their appeal to this Court.

This action originated when the County of Hidalgo brought suit to condemn certain rights of way and easements necessary for the completion of a flood control project. The land, upon which these easements were located, was owned by Guadalupe Fonseca and wife, Otilia Fonseca, hereinafter referred to as appellants. The County requested that special commissioners be appointed to assess any and all damages which may result from the County's exercise of their rights of eminent domain.

On May 22, 1974, the special commissioners, after hearing evidence, found and assessed damages to be paid by the County in the amount of $29,114.00. Subsequent to the award of the commissioners, certain objections and exceptions were levied on behalf of Mr. and Mrs. Fonseca to the award of the special commissioners and notice of appeal was duly filed in this proceeding. Appellants more specifically complained that the award of the commissioners was grossly insufficient, inadequate and less than the fair market value of the land. Thereafter, the County deposited into the registry of the court a check in the amount of $29,114.00 to cover the commissioners' decree.

Negotiations then ensued between the appellants and H. M. Pike, the director of Hidalgo County's right of way department.

The appellants and the County's agent agreed to settlement terms whereupon the appellants signed and executed easement deeds in favor of the County covering the lands owned by appellants. The County then sent an agreed judgment to appellants' attorney, the Honorable Eduardo de Ases, together with copies of two executed easement deeds for his approval and signature. Appellants' attorney did not contact his clients concerning this matter, but instead signed the agreed judgment and returned it to the court where final judgment was entered on September 3, 1974.

The two easement deeds reflect that the appellants granted to appellee an easement to enter and re-enter certain lands for the purposes as set out therein. The appellants were to receive the sum of $29,114.00 for such easement. The County's exhibit 1 reflects, in addition, the receipt of certain monies from the appellants as set out below:

August 8, 1974

Received of Guadalupe Fonseca and wife, Otila (sic) Fonseca, $569.00, in cash, which, along with a credit of $131.00 due from Hidalgo County as balance for said easements and a note on the amount of $500.00, with no interest, due in 6 months, as full payment of all improvements located on the parcels which have Easement Deeds in favor of Hidalgo County.

It is also understood that these improvements are to be removed from site at Mr. Fonseca's expense, said moving to be accomplished within approximately 2 weeks.

HIDALGO COUNTY RIGHT OF WAY DEPARTMENT

By: /s/ H. M. Pike
_____
H. M. Pike, Director

ACCEPTED:
/s/ Guadalupe Fonseca
_____
Guadalupe Fonseca
/s/ Otilia C. Fonseca     "
_____
Otilia Fonseca

The County contends that this receipt reflects that an agreement was in fact reached with appellants. The County contends that the appellants executed the easement deeds in favor of the County in return for the County's payment of an additional sum of $131.00 over that amount set out by the commissioners ($29,114.00), together with the County's agreement to sell back to the appellants all of the improvements on said property for the sum of $1,200.00 under this agreement. The County would allow appellants to pay $569.00 in cash, while allowing a credit of $131.00 which would be paid to Hidalgo County when appellants withdrew the additional sum of money ($29,114.00) from the court, together with the execution of one promissory note by appellants in the amount of $500.00. Three days after the entry of the final agreed judgment, appellants filed their motion to set aside the judgment.

The appellants contend that they signed and executed the easement deeds with the intent that such would have no effect on their pending lawsuit concerning the amount of damages, and were thus mistaken as to the effect of such. The County on the other hand contends that there was no mistake and that the easement deeds were signed and executed with the understanding that a final settlement had been reached, such being the purpose of the agreed judgment.

After hearing evidence on the above contentions, the trial court denied appellants' motion to set aside the judgment. From that judgment, the appellants have perfected their appeal to this Court.

The appellants bring forward their appeal on two points of error. In appellants' first point, they contend that the trial court should have set aside the judgment on the basis that a mistake caused appellants to sign settlement papers and appellants' counsel to approve the final judgment. This point is overruled. The trial court found among its findings of fact the following:

"XVIII.

Defendants, Guadalupe Fonseca and wife, Otilia Fonseca, and their nephew, Santos Fonseca, fully understood that they were talking to Mr. Pike to arrange a final settlement of the case and that the only way they could re-purchase the improve-

ments from Hidalgo County would be to settle the entire controversy.

### XIX.

Mr. Pike also told the Defendants and their nephew that if Defendants would sign the said Easement Deeds, the County would pay them an additional $131.00 and sell the improvements to the Defendants for the sum of $1,200.00, by allowing Defendants to pay $569.00 cash at that time, allowing a credit of $131.00, which would be paid to Hidalgo County when Defendants withdrew the additional sum of money from the Registry of the Court, and the execution of one promissory note by Defendants in the principal amount of $500.00, with no interest, payable to Hidalgo County in 6 months, provided also that they would move the improvements from the property at their expense within two weeks.

### XXI.

The Defendants and their nephew fully understood the terms of the settlement and voluntarily signed the said Easement Deeds, knowing that they were settling their case and all claims against Hidalgo County in doing so."

The first question we must determine is whether appellants are complaining of a mutual or unilateral mistake. The appellants contend that in the case at bar, the "mistake" is the settlement of the case which appellants wanted submitted to a jury. Here, the mistake could only be considered a "unilateral mistake". The County states that there was no mistake on its part with respect to the execution of the easement deeds and the entry of the final judgment and appellants do not so contend to the contrary. The County contends that the effect of such easement deeds, together with the entry of the final judgment constituted the final agreed settlement of the case. We must agree.

The appellants cite as their authority *James T. Taylor and Son, Inc. v. Arlington Independent School District*, 160 Tex. 617, 335 S.W.2d 371 (Tex.Sup.1960). We agree that this case stands for the proposition that equitable relief will be granted against a unilateral mistake when the conditions of remedial mistake are present. However, it is proper to note what these conditions are. Generally, the plaintiff must show that: 1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; 2) the mistake relates to a material feature of the contract; 3) the mistake must have been made regardless of the exercise of ordinary care; 4) the parties can be placed in status quo in the equity sense, i.e., recission must not result in prejudice to the other party except for the loss of his bargain. See also *Colvin v. Baskett*, 407 S.W.2d 19 (Tex.Civ.App., Amarillo 1966, no writ). The burden here is on appellants to prove that the above conditions existed. It should be noted at the outset that there is no allegation of fraud.

The first condition which must exist is that the mistake is of so great a consequence that to enforce the contract, or as in this case the judgment, would be unconscionable. We do not believe appellants have satisfactorily shown that this condition exists. There was no evidence introduced showing that the sum of $29,245.00 was an unreasonable amount or that the easement and settlement agreement could be considered unconscionable. In fact, according to Mr. Pike, the appellants were given the option of retaining the house, water pump and shed by paying the County $1,200.00, a sum much less than their actual value. After the settlement, the appellants removed the building from the land apparently accepting the settlement agreement in part. It also appears that the $29,245.00 settlement figure was more than the award of the special commissioners. We cannot say that the mistake was of so great a consequence that to enforce the agreement and judgment would be unconscionable.

■ Another element which appellants had the burden of proving was that the mistake was made regardless of the exercise of ordinary care. Appellants' burden here was to show that even by the exercise of ordinary care, the mistake would have occurred. Appellant Otilia Fonseca testified that she thought the papers (easement deeds), they were signing were for the buying of these improvements, "just buying their house". However, when asked whether she had read what she signed, she stated she just glanced at them and did not read what she had signed. Guadalupe Fonseca, in response to the same question, whether he tried to read those papers before signing them, testified that he did not. Had the appellants used ordinary care, that being to read the easement deeds prior to their signing them, the mistake might have been avoided.

■ The third and probably the most important condition that must be present for the granting of equitable relief against a unilateral mistake is that the parties must prove that they can be placed back in status quo (in the equity sense), causing no prejudice to the other party except for the loss of bargain. The county upon receiving the easement deeds which covered the appellants' property also received all of the improvements that were situated thereon. These improvements were to be sold later by the County by public auction and removed from the property. The settlement agreement permitted the appellants to repurchase the house and all the other improvements for $1,200.00. After the settlement agreement had been signed, the appellants paid the County part of the re-purchase price ($569.00) in cash, and received a credit of $131.00. Thereafter, the appellants removed the house and other improvements from the land. However, after the suit was filed, they refused to tender or offer to tender back the property to the County or to offer to do any act which would restore the parties to the status existing prior to the settlement. Because the improvements have been removed from the land, it would be difficult (even if the appellants had offered) to restore the improvements to their same place and condition prior to the sale.

■ The appellants further contend that a court of equity will not permit a person to take advantage of another's ignorance or mistake, even of the law, if that person knew of the misapprehension at the time of the transaction and did not correct it. Citing 22 Tex.Jur.2d Equity, § 13 (1961). The trial court found against the appellants on this fact question. There was no evidence that the County knew of appellants' misapprehension at the time of the transaction. This is particularly true in view of the fact that had the appellants read the settlement papers prior to signing them, any questions that they may have had would have been cleared up. Appellants' first point of error is overruled.

■ The case must be affirmed for still another reason. All of the settlement papers, including the easement deeds (after they had been signed by the appellants) were forwarded to the appellants' attorney for his examination and approval. The attorney approved and signed the papers and returned them to the trial court for entry of judgment. No one contends that any fraud was involved in procuring the settlement or in obtaining the signatures of the parties or their attorney. It is the law in Texas that in absence of fraud, a party is as fully concluded by the acts of his attorney as if he were acting for himself. A court will not set aside a judgment because of the negligence or mistakes of his attorney. Citing *Sandoval v. Rattikin*, 395 S.W.2d 889 (Tex.Civ.App., Corpus Christi 1965, writ ref'd n.r.e.), reh. denied 385 U.S. 964, 87 S.Ct. 389, 17 L.Ed.2d 309; 34 Tex.Jur.2d § 213; 25 Tex.Jur.2d § 2–6; and cases cited therein. *In re Y*, 516 S.W.2d 199 (Tex.Civ. App., Corpus Christi 1974, writ ref'd n.r.e.). See also *Metts v. Waits*, 286 S.W. 923 (Tex. Civ.App., Austin 1926, no writ); *Maeding v. Maeding*, 155 S.W.2d 991 (Tex.Civ.App., Galveston 1941, no writ). It is obvious that

had there been any misapprehension on the part of the appellants or any misunderstanding as to the terms of the settlement, such could have been concluded by an inquiry of the appellants' attorney or by the appellants' attorney contacting his clients.

Appellants in their other point of error argue that the trial court erred in attempting to recant its findings of fact and conclusions of law. On October 10, 1974, the appellants requested findings of fact and conclusions of law. Subsequently, the County filed with the trial court proposed findings of fact and conclusions of law. On the last page of such instrument, there appears the trial court's notation: "adopted by Court November 4, 1974". It was signed by the trial judge. The appellants then on November 6, 1974, gave notice to the trial judge of his failure to make findings of fact and conclusions of law. For some unexplained reason, the trial court then signed additional findings of fact and conclusions of law prepared by and favoring the appellants. The conflict was later discovered and cleared up by the trial court's order dated November 21, 1974, designated "Findings of Fact and Conclusions of Law" in which the court stated:

"It is the opinion and finding of the Court that the submitted Findings of Fact and Conclusions of Law filed by the Condemnor (County) are adopted by the Court and were adopted by the Court by a notation on such submission on the 4th day of November, 1974."

The appellants contend that the attempt by the court to switch to its original findings of fact and conclusions of law comes too late since they were not done within the time specified by Rule 297 Texas Rules of Civil Procedure. This rule requires such findings and conclusions to be filed thirty (30) days before time for filing the transcript. That time would have been December 1, 1974. It is really unnecessary to pass upon the question of timely filing because even if the findings of fact and conclusions of law were not timely filed,

they were filed in ample time for the appeal to be perfected, and the record to be timely filed in this Court. We have the completed record before us. The failure of a trial court to file its findings of fact in accordance with the rule will not call for a reversal if the record reaches the appellate court in time and it shows that the complaining party has suffered no injury because of its late filing. See *Schwartz v. Jacob*, 394 S.W.2d 15 (Tex.Civ.App., Houston 1965, writ ref'd n.r.e.); *Joe R. Starks Construction Co., Inc. v. G. A. Mallick, Inc.*, 425 S.W.2d 409 (Tex.Civ.App., Fort Worth 1968, no writ); *Tippit v. Tippit*, 360 S.W.2d 177 (Tex.Civ.App., Beaumont 1962, no writ); *Brown v. Brown*, 500 S.W.2d 210 (Tex.Civ. App., Texarkana 1973, no writ); 4 McDonald, Texas Civil Practice § 16.08.03(c) (1971). The appellants have not demonstrated probable harm because of the late filing of the findings of fact and conclusions of law. There is no reversible error. Rule 434, T.R.C.P.; *Bostwick v. Bucklin*, 144 Tex. 375, 190 S.W.2d 818 (1945); *Cantu v. Cantu*, 253 S.W.2d 957 (Tex.Civ.App., San Antonio 1952, no writ).

The appellants next complain that certain findings of fact are mere conclusions of law and are directly contradicted by testimony of witnesses and are, therefore, inappropriate, unacceptable and form no basis for a final judgment. Rule 296, T.R.C.P., provides that conclusions of law and findings of fact be stated separately. However, this is directory only. The appellate courts will construe the finding and conclusion together and if possible to be in harmony with the judgment so as to support it. *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299 (Tex.Sup.1963). Assignment of the wrong reasons by the trial court of its conclusions, transformation of the real character of finding, and conclusions, or finding and conclusion that might be mixed, is not reversible error. Whatever their nature makes them, they still are that in substance and in effect. See *Shirey v. Albright*, 404 S.W.2d 152 (Tex.Civ.App., Corpus Christi 1966, writ ref'd n.r.e.). This

being a non-jury case, the trial court was the judge of the credibility of the witnesses and the weight to be given their testimony. The findings of the court are entitled to the same weight and conclusiveness on appeal as the verdict of the jury. *Arnold v. Caprielian*, 437 S.W.2d 620 (Tex.Civ.App., Tyler 1969, writ ref'd n.r.e.); 4 Tex.Jur.2d Appeal and Error—Civil, § 839 (1959).

We have carefully reviewed the entire record, including the findings of fact. There is evidence of probative force to support the findings and the judgment. As such, the findings are controlling on the reviewing court and will not be disturbed even though the evidence is conflicting and the appellate court might have reached a different conclusion. *Robinson v. Faulkner*, 422 S.W.2d 209 (Tex.Civ.App., Dallas 1967, writ ref'd n.r.e.); 4 Tex.Jur.2d, Appeal and Error—Civil, § 839 (1959). Appellants' second point of error is overruled.

The judgment of the trial court is affirmed.